# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 CR 113 - 2 | **DATE** | 11/8/2004 |
| **CASE TITLE** | USA vs. Warren | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
       ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order denying defendant's motion for a new trial.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | 2 |
| | No notices required. | | number of notices |
| ✓ | Notices mailed by judge's staff. | | NOV 0 9 2004 |
| | Notified counsel by telephone. | | date docketed |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | | docketing deputy initials |
| | Copy to judge/magistrate judge. | | 11/8/2004 |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice MPJ mailing deputy initials |

Document Number 119


DOCKETED
NOV 0 9 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TONY L. WARREN, )<br>)<br>Defendant. ) | No. 03 CR 113 |

### MEMORANDUM OPINION AND ORDER

On July 16, 2004, defendant Tony L. Warren was convicted by a jury on four counts of bank fraud, two counts of possessing forged securities, and five counts of transportation of stolen goods/ securities. Mr. Warren moves for a new trial on a number of grounds. Rule 33 allows motions for a new trial where required by the interests of justice. FED. R. CRIM. P. 33. However, such motions are disfavored, and properly granted only in the most extreme cases. *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998). Mr. Warren presents eight alleged errors, none of which justify the extraordinary remedy of a new trial. The motion is denied.

Mr. Warren first argues that he is entitled to a new trial because the government failed to turn over documents pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, Mr. Warren seeks disclosure of any documents the United States Secret Service maintains in relation to the deactivation of confidential

informants, stating that such information is crucial to Mr. Warren's defense of public authority. The government has steadfastly denied the existence of any such documents. Before I may grant a new trial for a *Brady* violation, Mr. Warren must establish that "(1) the prosecution suppressed evidence; (2) the evidence allegedly was favorable to the defense; and (3) the evidence was material to an issue at trial." *United States v. Reyes*, 270 F.3d 1158, 1166 (7th Cir. 2001).

Mr. Warren contends that the government has suppressed evidence which should have been disclosed pursuant to *Brady*. However, Mr. Warren presents no evidence that the documents he is seeking – deactivation forms for Secret Service confidential informants – even exist. The government continues to deny that such a form exists, submitting the affidavit of Special Agent Douglas Farrell in support. The government further asserts that any notation or memos specific to Mr. Warren were destroyed in the attack on the World Trade Center on September 11, 2001. Mr. Warren rests his contention that the documents do exist on Mr. Farrell's earlier reference to the formal deactivation of Mr. Warren, stating that such phrasing implies that form documents for that purpose do exist. In the face of the government's steadfast denial, as well as Mr. Warren's failure to specifically question Special Agent Matthew Quinn about the existence of such documents at trial, this

unspecific reference is not enough to evidence the existence of the documents Mr. Warren seeks.

Mr. Warren next argues that the failure of the prosecution to disclose notes of a telephone conversation with Mr. Warren made by Assistant United States Attorney Richard Donoghue until just prior to Mr. Donoghue's testimony warrants a new trial. On November 5, 2002, Mr. Warren apparently called Mr. Donoghue, who subsequently made notes of the conversation for an on-going investigation. Mr. Warren states that the notes were discoverable under Rule 16(a)(1)(A), which provides that the government must disclose, upon request, any statement made by the defendant in response to interrogation by a known government agent if the government intends to use the statement at trial. FED. R. CRIM. P. 16(a)(1)(A). Rule 16 provides that the government shall disclose

> the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial.

FED. R. CRIM. P. 16(a)(1)(A).

Mr. Donoghue's notes of the telephone conversation are arguably material to be produced under Rule 16. However, prejudice for belatedly producing such material only exists when the defendant is "unduly surprised and lacks an adequate opportunity to prepare a defense, or when the violation substantially influences the jury." *United States v. Stevens*, No. 03-1104, 2004 WL 1853718 (7th Cir. Aug. 19, 2004). Mr. Donoghue's notes were provided to Mr.

Warren shortly before Mr. Donoghue took the stand. Mr. Warren did not request a continuance or any other remedy at the time, and had the opportunity to fully cross-examine Mr. Donoghue. *See id.* Even now, Mr. Warren makes no argument as to how he would have questioned Mr. Donoghue differently with prior knowledge of the notes. Even if the government erred in not producing Mr. Donoghue's notes until just before his testimony, that error does not rise to the level of a constitutional harm and does not warrant a new trial.

Mr. Warren also argues that he was denied a fair trial because the government was permitted to question Mr. Donoghue about the reasons underlying dismissal of earlier charges against Mr. Warren.[1] Mr. Warren argues that this testimony was irrelevant and prejudicial, because he had never been informed of the government's reasons for dismissing the charges. During the pretrial conference, I made it clear to Mr. Warren and his counsel that if the issue of the New York charges and subsequent dismissal was raised, I would permit the government to present witnesses to explain the reasoning behind its actions. Not only did Mr. Warren's counsel fail to object at that time, counsel stated that he "would love them to" present such a witness to allow the jury to evaluate the reasonableness of the government's explanation. Mr.

---

[1] Mr. Warren was charged for similar conduct in New York, but the charges were dismissed in October 2002.

Warren wanted to present his assumptions resulting from the dismissal; it was reasonable to allow the government a chance to explain its actions.

Mr. Warren next argues that he was denied a fair trial by my admonition during defense counsel's closing argument that the jury was to disregard counsel's statement about reasonable doubt. This argument misconstrues counsel's statement. During closing arguments, defense counsel stated

> But if you've got any doubt about whether or not he [Mr. Warren] was deactivated, the law says and the Judge will ... [cut off by objection]

After a brief sidebar during which I reminded counsel that "reasonable doubt" is not defined as "any doubt," I instructed the jury to disregard defense counsel's last statement regarding the law. When the law is misstated during a closing argument, it is proper for the court to instruct the jury to disregard the misstatement. *See United States v. Fruth*, 36 F.3d. 649, 654 (7th Cir. 1994).

Mr. Warren contends that he was prevented from impeaching a government witness with a prior inconsistent statement, depriving him of a fair trial. At trial, Mr. Warren sought to impeach Mathew Quinn with a statement Mr. Quinn had made during a telephone interview with counsel for Mr. Warren regarding the length of time Mr. Quinn oversaw Mr. Warren's confidential informant activities. I sustained an objection to use of the unsworn telephone interview.

(Tr.p. 50-51) A full transcript of the interview shows that the statement (page 39 of the transcript of the interview) is entirely consistent with Mr. Quinn's testimony at trial on this point, but Mr. Warren does not appear to be arguing otherwise. (Tr.p. 47) In his post-trial motion for a new trial, Mr. Warren argues that he was not allowed to impeach Mr. Quinn's testimony at trial that "he told Warren he was deactivated." Defendant's Motion for a New Trial at 6. At that point, I did not have a transcript of the testimony but I assumed that Mr. Warren was accurately reporting both the trial testimony and the telephone interview, and it appeared there was an inconsistency that I had not allowed Mr. Warren to question Mr. Quinn about since a partial transcript of the pretrial telephone interview, quoted by Mr. Warren in his motion, quoted Mr. Quinn stating that he had never told Mr. Warren he was "deactivated."[2] A comparison of the actual transcript of the interview and the trial transcript shows there was no inconsistency. At trial, Mr. Quinn testified that he would not use the word "deactivation," although he had told Mr. Warren he was no longer working for the government. (Tr.p. 57, 53, 55) In the telephone interview, Mr. Quinn stated that he never used the word "deactivate" but he did "personally tell him he is to no longer to

---

[2] As a result, I requested supplementary briefing on the issue, indicating that if the stated discrepancy reported in the motion were accurate the government would need to show that my refusal to allow the "impeachment" was harmless.

[sic] do anything on behalf of the Secret Service. (Tr.p. 53) Since there is no inconsistency Mr. Warren was not prejudiced by my ruling at trial.

Mr. Warren finally argues that a number of jury issues deprived him of a fair trial. Mr. Warren argues that the Federal Rules of Criminal Procedure do not allow for special verdicts, such as that rendered by the jury here. Special verdicts are permitted in federal criminal trials. *United States v. Smith*, 938 F.2d 69, 70 (7th Cir. 1991). Mr Warren also claims that several of the instructions given to the jury denied him a fair trial, including instructions that did not state the government had to disprove Mr. Warren's defense of public authority beyond a reasonable doubt and an admonishment to reach a verdict without considering potential sentences. None of these instructions deprived Mr. Warren of a fair trial. The government need not disprove Mr. Warren's defense of public authority beyond a reasonable doubt. *Patterson v. New York*, 432 U.S. 197, 210 (1977) (upholding New York requirement that defendant prove affirmative defense). It was also proper to instruct the jury to disregard potential sentences while reaching its verdict. *Shannon v. United States*, 512 U.S. 573, 579 (1994).

ENTER ORDER

*Elaine L. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: November 8, 2004